IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 7:20-cv-75

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY a/s/o NATIONAL FOOTBALL LEAGUE | : : : : |
| Plaintiff, | : **COMPLAINT** : **DEMAND FOR JURY TRIAL** |
| v. | : : |
| XDS, LLC; CGS PREMIER, Inc.; BLACK'S TIRE SERVICE, INC.; and POMP'S TIRE SERVICE, INC. | : : : : |
| Defendants. | : |

NOW COMES PLAINTIFF, Markel American Insurance Company as subrogee of National Football League, by and through its undersigned attorney, states by way of Complaint against Defendants, XDS, LLC, CGS Premier, Inc., Black's Tire Service, Inc. and Pomp's Tire Service, Inc., as follows:

## PARTIES

1. Plaintiff, Markel American Insurance Company (hereinafter "Markel"), is a corporation duly organized and existing under the laws of the Commonwealth of Virginia with its principal place of business located at 4521 Highwoods Parkway, Glen Allen, Virginia 23060 and at all times relevant hereto was in the business of issuing property insurance policies.

2. Defendant, XDS, LLC (hereinafter "XDS"), is a foreign corporation organized and existing under the laws of the State of New York with its principal place of business located at 394 Waverly Avenue, Brooklyn, New York 11238.

1

3. Defendant, CGS Premier, Inc. (hereinafter "CGS"), is a foreign corporation organized and existing under the laws of the State of Wisconsin with its principal place of business located at S64W15586 Commerce Center Parkway, Muskego, Wisconsin 53150.

4. Defendant, Pomp's Tire Service, Inc. (hereinafter "Pomp's Tire"), is a foreign corporation organized and existing under the laws of the State of Wisconsin with its principal place of business located at 1122 Cedar Street, Green Bay, Wisconsin 54305.

5. Defendant, Black's Tire Service, Inc. (hereinafter "Black's Tire"), is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 30 Bitmore Road, Whiteville, North Carolina 28472.

## JURISDICTION

6. Plaintiff, Markel, is a citizen of the Commonwealth of Virginia. Defendant XDS is a citizen of the State of New York. Defendants, CGS and Pomp's Tire, are citizens only the State of Wisconsin. Defendant, Black's Tire Service, is a citizen of the State of North Carolina. As such, diversity exists between Plaintiff and Defendants.

7. The amount in controversy in this matter exceeds $75,000.00 exclusive of interest and costs.

8. Accordingly, the United States District Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## VENUE

9. Pursuant to 28 U.S.C.A. § 1391, venue is proper in the United States District Court for the Eastern District of North Carolina because it is the judicial district within which a substantial part of the events giving rise to Plaintiff's claim occurred, which is 10448 Ocean Highway E, Leland, North Carolina.

## FACTUAL BACKGROUND

10. Plaintiff's insured, the National Football League (hereinafter "Plaintiff's Insured"), entered into a contract dated March 1, 2017 with Defendant XDS for the design and build of a tow vehicle and an Airstream 32' trailer ("the MediaCruiser").

11. Upon information and belief, Defendant XDS retained Defendant CGS as a subcontractor to manufacture, assemble and/or build the custom Mediacruiser.

12. Upon information and belief, Defendant CGS retained Defendant Pomp's Tires to install tires on the Mediacruiser.

13. Thus, prior to October 7, 2017, Defendants XDS, CGS, and Pomp's Tires designed, manufactured, assembled, and/or built the Mediacruiser.

14. At all times relevant hereto, Markel issued a policy of insurance under policy no. MKLM61M0051926 to the National Football League. Said policy covered the Mediacruiser and insured against other losses.

15. Thereafter, on October 6, 2017, Defendant Black's Tire replaced two tires on the left end of the forward axel of the Mediacruiser's trailer.

16. The following day, on October 7, 2017, the Mediacruiser catastrophically failed at the left front wheel hub of the Mediacruiser's trailer while at or near 10448 Ocean Highway E, Leland, North Carolina causing significant fire damage to the Mediacruiser ("the Fire Loss").

17. The Fire Loss was caused by the negligent and careless acts and/or omissions of Defendants in their assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, and maintaining the MediaCruiser.

3

18. As a direct and proximate result of the Fire Loss, Plaintiff's Insured suffered significant damage to its property and sustained certain other losses in an amount in excess of $75,000.00.

19. In accordance with the terms and conditions of the Policy, Plaintiff was required to and did make payments to its insured or on behalf of its insured in an amount in excess of $75,000.00 for damages sustained as a result of the Fire Loss.

20. By virtue of Plaintiff's payments made to its insured, Plaintiff is now subrogated to the extent of said payments to the rights of recovery that Plaintiff's Insured possessed against all Defendants.

## COUNT I– NEGLIGENCE
### Markel v. XDS, CGS & Pomp's Tire

21. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 20 of this Complaint as if fully set forth herein at length.

22. XDS, CGS and Pomp's Tire owed a duty to Plaintiff's Insured to properly design, manufacture, fabricate, assemble, test, and inspect the Mediacruiser in a careful, professional and non-negligent manner.

23. XDS, CGS and Pomp's Tire owed a duty to Plaintiff's Insured to properly design, manufacture, fabricate, assemble, test, and inspect the Mediacruiser in a manner which would not create a dangerous condition and/or increase the risk of harm to the Mediacruiser and/or other property.

24. XDS, CGS and Pomp's Tire owed a duty to Plaintiff's Insured to hire competent employees, agents, representatives, contractors and/or subcontractors to design, manufacture, fabricate, assemble, test, and inspect the Mediacruiser.

25. XDS, CGS and Pomp's Tire owed a duty to Plaintiff's Insured to design, manufacture and/or assemble the Mediacruiser in a manner that safeguarded the general public and Plaintiff's Insured from the risk of fire as a result of the sudden and catastrophic failure of the Mediacruiser.

26. XDS, CGS and Pomp's Tire owed a duty to Plaintiff's Insured to exercise reasonable and/or due care under the circumstances then and there existing.

27. XDS, CGS and Pomp's Tire carelessly and negligently breached all the above-described duties by:

   a. Failing to properly and safely design, fabricate, manufacture, assemble, test, and inspect the Mediacruiser that Defendants knew or reasonably should have known would subject Plaintiff's Insured to an unreasonable risk of harm;

   b. Failing to design, fabricate, manufacture, assemble, test, and inspect, the Mediacruiser that was safe for all reasonably foreseeable uses;

   c. Manufacturing, designing, fabricating, assembling, inspecting, and testing a Mediacruiser that XDS, CGS and Pomp's Tire knew or reasonably should have known subjected Plaintiff's Insured to an unreasonable risk of fire;

   d. Failing to provide adequate warnings and instructions regarding the risk of fire and possible resultant damage to the Mediacruiser;

   e. Failing to comply with applicable local, state and federal statutes, codes, regulations and generally recognized safety practices and standards;

   f. Failing to comply with industry standards and guidelines;

g. Failing to test and/or inspect the Mediacruiser to determine whether it could be used by Plaintiff's Insured without posing a risk of injury to life and/or to property;

h. Failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during the operation of the Mediacruiser;

i. Failing to warn Plaintiff's Insured about the defective condition of the Mediacruiser;

j. Negligently and carelessly designing, fabricating, manufacturing, assembling, inspecting, testing, and/or selling the Mediacruiser without adequate instructions, warnings, and/or safeguards;

k. Designing, fabricating, manufacturing, assembling, inspecting and/or testing the Mediacruiser which XDS, CGS and Pomp's Tire knew, or reasonably should have known, was defective in design and would cause injury to Plaintiff's Insured; and

l. Otherwise failing to use due care, as to be disclosed during the course of discovery.

28. The Fire Loss and resultant damages occurred as a direct and proximate result of XDS, CGS and Pomp's Tire's careless and negligent conduct, acts and/or omissions as averred above.

29. As a result of the Fire Loss and resultant damage, Plaintiff's Insured suffered damage to its property and sustained certain other losses in an amount in excess of $75,000.00.

30. As a result of XDS, CGS and Pomp's Tire's negligence and the resulting Fire Loss, and pursuant to the terms and conditions of the Policy, Markel made payments to or on behalf of its insured in an amount in excess of $75,000.00.

31. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against Defendants.

### COUNT II- PRODUCTS LIABILITY N.C. GEN. STAT. § 99B
### Plaintiff v. XDS, CGS and Pomp's Tire

32. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein at length.

33. Defendants, XDS, CGS and Pomp's Tire, designed, fabricated, manufactured, assembled, and sold the Mediacruiser and/or its component parts which is the subject of this lawsuit.

34. The North Carolina Product Liability Act (hereinafter "the Act"), N.C. Gen. Stat. § 99B, defines a "manufacturer" as "a person or entity who designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product prior to its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part."

35. XDS, CGS and Pomp's Tire are manufacturers of the Mediacruiser and/or its component parts as defined by N.C. Gen. Stat. § 99B.

36. Under the Act, XDS, CGS, and Pomp's Tire as manufacturers of the Mediacruiser owed a duty to Plaintiff's Insured to design, assemble, fabricate, produce and/or manufacture a product that was reasonably safe in design and formulation at the time the product was manufactured and left the control of XDS, CGS and/or Pomp's Tire.

37. Under the Act, XDS, CGS and Pomp's Tire, as manufacturers of the Mediacruiser, owed a duty to Plaintiff's Insured to act reasonably in providing adequate warnings or instructions.

38. The Mediacruiser was unreasonably dangerous and defective in that it created an unreasonable risk of serious harm to the intended users and/or operators.

39. XDS, CGS and Pomp's Tire breached their duties to Plaintiff's Insured by failing to properly manufacture, design, fabricate, assemble, test, inspect, and/or sell the Mediacruiser in a manner which would not create a dangerous condition and/or increase the risk of harm to Plaintiff's Insured.

40. XDS, CGS and Pomp's Tire breached their duties to Plaintiff's Insured by unreasonably failing to adopt a safer, practical, feasible and otherwise reasonable alternative design or formulation which would have prevented or substantially reduced the risk of harm to Plaintiff's Insured, without substantially impairing the usefulness, practicality or desirability of the Mediacruiser.

41. XDS, CGS, and Pomp's Tire breached their duties to Plaintiff's Insured by failing to provide adequate warnings or instructions to Plaintiff's Insured which created an unreasonably dangerous condition that Defendants knew, or should have known in the exercise of ordinary care, posed a substantial risk of harm to Plaintiff's Insured.

42. Since the Mediacruiser manufactured, fabricated, designed, and/or assembled by XDS, CGS, and Pomp's Tire was not reasonably safe in design or formulation, XDS, CGS and Pomp's Tire breached their duties to Plaintiff's Insured and are liable to Plaintiff for the injury and other damages proximately caused by their design, manufacture, and assembly of the unreasonably safe Mediacruiser.

43. As a direct and proximate result of the defective condition of the Mediacruiser, Plaintiff's Insured suffered damages to its property and sustained certain other losses in an amount in excess of $75,000.00.

44. As a result of the Fire Loss and resultant damages, and pursuant to the terms and conditions of the Policy, Markel made payments to or on behalf of its insured in an amount in excess of $75,000.00.

45. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against Defendants.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY & IMPLIED WARRANTY OF FITNESS FOR PARTIUCLAR PURPOSE**
**Plaintiff v. XDS, CGS and Pomp's Tire**

46. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein at length.

47. XDS, CGS and Pomp's Tire impliedly warranted that the Mediacruiser and its component parts were of merchantable quality, free from defects, constructed of adequate and sufficient material, and properly designed so as to be fit for the purpose for which it was intended.

48. XDS, CGS and Pomp's Tire breached their implied warranties by:

   a. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the defective Mediacruiser and its component parts;

   b. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the defective Mediacruiser which was not of merchantable quality;

  c. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the Mediacruiser which was not fit for the particular purpose for which it was designed and used; and

  d. Failing to ensure that the Mediacruiser was free from any and all defects before said product left Defendants' possession, custody and/or control.

49. The above-described breaches by XDS, CGS and Pomp's Tire constituted the cause in fact and the direct and proximate cause of the Fire Loss and the resultant damages.

50. XDS, CGS and Pomp's Tire received timely notice of the above-described breaches which were the direct and proximate cause of the Fire Loss and resultant damages.

51. As a direct and proximate result of the Fire Loss, Plaintiff's Insured, sustained damages to his real and business personal property and certain other losses in an amount in excess of $75,000.00.

52. As a result of the Fire Loss, Plaintiff has made payments to or on behalf of its insured in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

53. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against Defendants.

### COUNT IV – BREACH OF CONTRACT
### Markel v. XDS

54. Plaintiff hereby incorporates paragraphs 1 through 53 of this Complaint as if fully set forth herein at length.

55. Defendant XDS expressly and/or impliedly agreed to design and build the Mediacruiser in a good and workmanlike manner, free of defects and in accordance with all

applicable county, city and state codes, laws, and regulations, and general standards and practices of the trade and industry.

56. Based upon Defendant XDS' representations, Plaintiff's Insured entered into a contractual agreement dated March 1, 2017 with XDS for the design and build of the Mediacruiser.

57. Per said contract, Defendant XDS expressly represented and warranted that the Mediacruiser would be fit for its intended use.

58. Per said contract, Defendant XDS expressly represented and warranted that the Mediacruiser would be free from material defects in manufacture, materials and design.

59. Per said contract, Defendant XDS expressly represented and warranted that the Mediacruiser would function properly under ordinary use and operate in conformance with its standard use.

60. Per said contract, Defendant XDS expressly agreed to fix any defect in the design, manufacture, materials or workmanship of the Mediacruiser.

61. At all times relevant hereto, Plaintiff's Insured performed all of its obligations and conditions precedent to its agreement with Defendant XDS.

62. Defendant XDS breached its contract and express warranties with Plaintiff's Insured by:

   a. Failing to properly and safely design, fabricate, manufacture, assemble, test, and inspect the Mediacruiser that Defendants knew or reasonably should have known would subject Plaintiff's Insured to an unreasonable risk of harm;

   b. Failing to design, fabricate, manufacture, assemble, test, and inspect, the Mediacruiser that was safe for all reasonably foreseeable uses;

11

c. Manufacturing, designing, fabricating, assembling, inspecting, and testing a Mediacruiser that XDS knew or reasonably should have known subjected Plaintiff's Insured to an unreasonable risk of fire;

d. Failing to provide adequate warnings and instructions regarding the risk of fire and possible resultant damage to the Mediacruiser;

e. Failing to comply with applicable local, state and federal statutes, codes, regulations and generally recognized safety practices and standards;

f. Failing to comply with industry standards and guidelines;

g. Failing to test and/or inspect the Mediacruiser to determine whether it could be used by Plaintiff's Insured without posing a risk of injury to life and/or to property;

h. Failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during the operation of the Mediacruiser;

i. Failing to warn Plaintiff's Insured about the defective condition of the Mediacruiser;

j. Negligently and carelessly designing, fabricating, manufacturing, assembling, inspecting and/or testing the Mediacruiser without adequate instructions, warnings, and/or safeguards;

k. Designing, fabricating, manufacturing, assembling, inspecting and/or testing the Mediacruiser which XDS knew, or reasonably should have known, was defective in design and would cause injury to Plaintiff's Insured;

    l. Failing to fix defects in the design, manufacture, materials and workmanship of the Mediacruiser;

    m. Designing, fabricating, manufacturing, and/or assembling the Mediacruiser which was not fit for its intended use;

    n. Designing, fabricating, manufacturing and/or assembling the Mediacruiser which was not free from material defects in manufacture, materials and/or design;

    o. Designing, fabricating, manufacturing and/or assembling the Mediacruiser which failed to function properly under ordinary use;

    p. Designing, fabricating, manufacturing and/or assembling the Mediacruiser which failed to operate in conformance with its standard use; and

    q. Otherwise failing to use due care, as to be disclosed during the course of discovery.

63. The Fire Loss and resultant damages occurred as a direct and proximate result of XDS' breach of contract and express warranties.

64. As a direct and proximate result of the Fire Loss, Plaintiff's Insured, sustained damages to its property and certain other losses in an amount in excess of $75,000.00.

65. As a result of the Fire Loss, Plaintiff has made payments to or on behalf of its insured in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

66. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against all Defendants.

## COUNT V- BREACH OF CONTRACT
## Markel v. Black's Tire

67. Plaintiff hereby incorporates paragraphs 1 through 66 of this Complaint as if fully set forth herein at length.

68. Black's Tire expressly and/or impliedly agreed to perform all work performed on the Mediacruiser in a good and workmanlike manner and in accordance with all applicable county, city and state codes, laws, and regulations, and general standards and practices of the trade and industry.

69. Based upon Black's Tire's representations, Plaintiff's Insured entered into a contractual agreement with Black's Tire to perform certain work on the Mediacruiser, including but not limited to, replacing two tires located at the left front wheel hub of the Mediacruiser's trailer.

70. At all times relevant hereto, Plaintiff's Insured performed all of its obligations and conditions precedent to its agreement with Black's Tire.

71. Black's Tire breached the contract and its implied warranty of workmanlike performance by:

   a. Failing to perform work in a careful and workmanlike manner;
   b. Utilizing employees, workmen and/or subcontractors which Black's Tire knew, or in the exercise of reasonable care should have known, were not properly trained for the work to be performed on the Mediacruiser;

c. Failing to exercise reasonable care in the supervision and/or inspection of the work performed by its employees, agents, servants, workmen and/or subcontractors;

d. Failing to ensure that its employees, agents, servants, workmen, and/or subcontractors complied with all relevant industry-wide standards and/or trade practices;

e. Failing to perform its work so as to not create a foreseeable risk of harm to persons or property;

f. Permitting a defective and dangerous condition to exist that created an unreasonable risk of harm to the Mediacruiser, of which Black's Tire knew or in the exercise of reasonable care, should have known;

g. Failing to ensure that its employees, agents, servants, workman and/or subcontractors replaced two tires on the Mediacruiser's trailer so as to not create a foreseeable risk of harm to the property of Plaintiff's Insured;

h. Failing to properly replace two tires on the Mediacruiser's trailer so as to not create a foreseeable risk of harm to the property of Plaintiff's Insured;

i. Failing to properly replace two tires on the Mediacruiser's trailer; thereby, creating an unreasonable risk of harm to the property of Plaintiff's Insured;

j. Failing to reasonably anticipate that negligently, carelessly and/or recklessly replacing two tires on the Mediacruiser's trailer could pose an unreasonable risk of harm to Plaintiff's Insured;

k. Failing to act reasonably under all the circumstances; and

l. Such other acts or omissions that will be revealed during discovery.

72. The Fire Loss and resultant damages occurred as a direct and proximate result of the Black's Tire's breach of contract and implied warranties.

73. As a direct and proximate result of the Fire Loss, Plaintiff's Insured, sustained damages to its property and certain other losses in an amount in excess of $75,000.00.

74. As a result of the Fire Loss, Plaintiff has made payments to or on behalf of its insured in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

75. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against all Defendants.

### COUNT VI – NEGLIGENCE
### Markel v. Black's Tire

76. Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 75 as if fully set forth herein at length.

77. Black's Tire had a duty to exercise reasonable care in the work performed on the Mediacruiser and to ensure its work was performed in a good and workmanlike manner that did not create a risk of damage to Plaintiff's Insured's property and in accordance with all local, state and federal laws, rules, regulations and codes, and industry standards and codes.

78. Black's Tire, acting through its agents, employees, servants, workmen, and authorized subcontractors, breached the above duties of care by:

79. Failing to perform work in a careful and workmanlike manner;
   a. Utilizing employees, workmen and/or subcontractors which Black's Tire knew, or in the exercise of reasonable care should have known, were not properly trained for the work to be performed on the Mediacruiser;

b. Failing to exercise reasonable care in the supervision and/or inspection of the work performed by its employees, agents, servants, workmen and/or subcontractors;

c. Failing to ensure that its employees, agents, servants, workmen, and/or subcontractors complied with all relevant industry-wide standards and/or trade practices;

d. Failing to perform its work so as to not create a foreseeable risk of harm to persons or property;

e. Permitting a defective and dangerous condition to exist that created an unreasonable risk of harm to the Mediacruiser, of which Black's Tire knew or in the exercise of reasonable care, should have known;

f. Failing to ensure that its employees, agents, servants, workman and/or subcontractors replaced two tires on the Mediacruiser's trailer so as to not create a foreseeable risk of harm to the property of Plaintiff's Insured;

g. Failing to properly replace two tires on the Mediacruiser's trailer so as to not create a foreseeable risk of harm to the property of Plaintiff's Insured;

h. Failing to properly replace two tires on the Mediacruiser's trailer; thereby, creating an unreasonable risk of harm to the property of Plaintiff's Insured;

i. Failing to reasonably anticipate that negligently, carelessly and/or recklessly replacing two tires on the Mediacruiser's trailer could pose an unreasonable risk of harm to Plaintiff's Insured;

j. Failing to act reasonably under all the circumstances; and

k. Such other acts or omissions that will be revealed during discovery.

80. The negligence of Black's Tire was the direct and proximate cause of the damages and losses suffered by Plaintiff's Insured.

81. As a result of the Fire Loss and resultant damage, Plaintiff's Insured suffered damages to the its property and sustained certain other losses in an amount in excess of $75,000.00.

82. As a result of Black's Tire's negligence and the resulting Fire Loss, and pursuant to the terms and conditions of the Policy, Markel made payments to or on behalf of its insured in an amount in excess of $75,000.00.

83. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Markel American Insurance Company as subrogee of the National Football League prays for judgment against the Defendants as follows:

1). That Plaintiff have and recover damages from Defendants individually, jointly, and severally, in an amount in excess of $75,000, to be determined at trial for the Defendants' breach of contract, negligence, violations of N.C. Gen. Stat. § 99B, breach of express warranty, implied warranty of merchantability, and implied warranty of fitness, and any other claims alleged by Plaintiff throughout the pendency of this action.

2). That Defendants be taxed with the costs of this action, including reasonable attorney fees as allowed by law, expenses, prejudgment interest, etc.;

3) That all issues so triable, be tried to a jury; and

4). For any other relief this Court deems just and proper under the circumstances.

Respectfully submitted this the 22nd day of April 2020.

                            **DeVORE, ACTON & STAFFORD, P.A.**

                            /s/F. William DeVore, IV
                            F. William DeVore, IV,
                            N.C. State Bar No. 39633
                            wdevore@devact.com
                            438 Queens Road
                            Charlotte, NC  28207
                            Telephone: (704) 377-5242
                            Facsimile: (704) 332-2825
                            *Attorney for Plaintiff*

                            **Stutman Law**
                            Michael Wallace
                            20 East Taunton Road, Suite 403
                            Berlin, New Jersey 08009
                            Phone: 856-767-6800
                            Email: wallacem@StutmanLaw.com
                            *To be admitted pro hac vice*

19

Case 7:20-cv-00075-M   Document 1   Filed 04/22/20   Page 19 of 19