IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No. 7:20-cv-00075-M

| | | |
|---|---|---|
| MARKEL AMERICAN INSURANCE COMPANY a/s/o NATIONAL FOOTBALL LEAGUE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | **OPINION AND ORDER** |
| XDS, LLC; CGS PREMIER, INC.; BLACK'S TIRE SERVICE, INC.; and POMP'S TIRE SERVICE, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on: (1) Defendant CGS Premier, Inc.'s ("CGS") motion to dismiss the causes of action brought against it within Plaintiff Markel American Insurance Company's complaint, filed May 26, 2020 [DE-17]; (2) CGS's motion to dismiss Defendant Black's Tire Service, Inc.'s ("Black's Tire") crossclaim against CGS for common-law indemnity, filed May 26, 2020 [DE-19]; and (3) CGS's motion to dismiss Defendant Pomp's Tire Service, Inc.'s ("Pomp's Tire") crossclaim against CGS for common-law indemnity, filed June 3, 2020 [DE-25].

For the reasons that follow, CGS's motions are GRANTED.

## I. Background

In its complaint, Plaintiff alleges the following facts: Plaintiff is an insurance company that had an insurance policy with the National Football League (the "NFL") that covered a tow vehicle and trailer collectively known as the Mediacruiser. [DE-1 ¶¶ 10, 15] In March 2017, the NFL contracted with Defendant XDS, LLC ("XDS") to "design and build" the Mediacruiser. [DE-1 ¶ 10] XDS then

1

subcontracted with CGS to "manufacture, assemble and/or build" the Mediacruiser, and CGS retained Pomp's Tire "to install tires on" the Mediacruiser. [DE-1 ¶¶ 11–12] The complaint does not specify when construction of the Mediacruiser was completed. On October 6, 2017, the NFL hired Black's Tire to "replace[] two tires on the left end of the forward axel [sic] of the Mediacruiser's trailer." [DE-1 ¶¶ 15, 69] On October 7, 2017, "the Mediacruiser catastrophically failed at the left front wheel hub of the Mediacruiser's trailer . . . causing significant fire damage to the Mediacruiser" (the "Fire"). [DE-16] Sometime thereafter, Plaintiff paid the NFL for damages sustained by the NFL in connection with the Fire pursuant to the insurance policy between them. [DE-1 ¶ 19]

On April 22, 2020, Plaintiff filed suit in this court seeking to recoup the Fire-related payments it made to the NFL, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] [DE-1] In its complaint, Plaintiff sued Defendants jointly and severally pursuant to the following causes of action: (1) negligence, against XDS, CGS, and Pomp's Tire; (2) N.C. Gen. Stat. § 99B products liability, against XDS, CGS, and Pomp's Tire; (3) breach of the implied warranties of merchantability and fitness for a particular purpose, against XDS, CGS, and Pomp's Tire; (4) breach of contract, against XDS; (5) breach of contract, against Black's Tire; and (6) negligence, against Black's Tire. [DE-1]

Black's Tire answered the complaint on May 18, 2020 and, *inter alia*, crossclaimed against the other Defendants for contribution and common-law indemnity. [DE-14] In its crossclaim for common-law indemnity, Black's Tire alleged as follows:

> [S]hould it be determined that Black's Tire was negligent on the occasion complained of in Plaintiff's Complaint and that Black's Tire's negligence was a proximate cause of any injury to Plaintiff . . . then it is alleged that [XDS, CGS, and Pomp's Tire] were negligent, and that such negligence was primary and active, and

---

[1] Although Plaintiff's complaint insufficiently alleged facts necessary to satisfy the court that it has diversity jurisdiction over this dispute [*see* DE-44], Plaintiff and XDS's stipulation has convinced the court that it has jurisdiction [*see* DE-47].

2

> a proximate cause or the proximate cause of Plaintiff's injuries and damages, and any such negligence on behalf of Black's Tire . . . was secondary and passive[.] [DE-14 at 9]

On May 26, 2020, CGS: (1) answered the complaint, and crossclaimed against Black's Tire for contribution [DE-16]; (2) moved to dismiss the complaint's causes of action against it pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") [DE-17]; and (3) moved to dismiss Black's Tire's crossclaim against it pursuant to Rule 12(b)(6) [DE-19].

Pomp's Tire answered the complaint on May 29, 2020 and, *inter alia*, crossclaimed against the other Defendants for contribution and common-law indemnity. [DE-21] In its crossclaim for common-law indemnity, Pomp's Tire alleged as follows:

> In the event it is determined that any negligence or wrongful act of Pomp's was a proximate cause of any damages alleged by the plaintiff . . . then it is alleged that each co-defendant was negligent on the occasions in question as described in plaintiff's Complaint or otherwise, and that such negligence was primary and active and was a proximate cause if not the proximate cause of the damages alleged by the plaintiff, while any negligence of Pomp's was secondary and passive[.] [DE-21 at 13]

On June 3, 2020, CGS moved to dismiss Pomp's Tire's crossclaim against it pursuant to Rule 12(b)(6). [DE-25] Each of CGS's motions have been fully briefed and are ripe for adjudication.

## II.     Legal standards

Federal Rule of Civil Procedure 8 ("Rule 8") requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge a pleading's sufficiency under Rule 8 by moving the court pursuant to Rule 12(b)(6) to dismiss the pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the

3

plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face."[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

---

[2] Plaintiff's citations to pre-*Twombly* case law regarding a notice pleading standard [DE-28 at 4–5], including cases quoting *Conley v. Gibson*, 355 U.S. 41 (1957), are invocations of authority applying a misguided interpretation of Rule 8 that the *Twombly* Court clearly rejected more than a decade ago. *See Twombly*, 550 U.S. at 562–63 (holding that *Conley*'s "no set of facts" language was not intended to describe a pleading standard and "has earned its retirement").

4

A defendant may also move to dismiss a co-defendant's crossclaim brought against it pursuant to Rule 12(b)(6), and a crossclaim so challenged is also reviewed for *Twombly* plausibility. *Cf. Stanford v. United States*, 948 F. Supp. 2d 729, 746 (E.D. Ky. 2013) (granting judgment on the pleadings on a common-law-indemnity crossclaim because the crossclaimant failed to make factual allegations necessary to render the crossclaim plausible under *Twombly*, and noting that a Rule 12(c) "motion for judgment on the pleadings [is reviewed] under the same standard as a [Rule 12(b)(6)] motion to dismiss").

## III. Analysis

CGS has moved to dismiss: (a) the complaint's claims against it for (i) negligence, (ii) N.C. Gen. Stat. § 99B products liability, and (iii) breach of the implied warranties of merchantability and fitness for a particular purpose; (b) Black's Tire's crossclaim against it for common-law indemnity; and (c) Pomp's Tire's crossclaim against it for common-law indemnity. [DE-17; DE-19; DE-25] The court will address these claims in turn.

### a. Plaintiff's claims

#### i. Negligence

To state a claim for negligence sufficiently to withstand a Rule 12(b)(6) challenge, a plaintiff must plausibly allege "'the essential elements of negligence: duty, breach of duty, proximate cause, and damages.'" *Olds v. United States*, 473 F. App'x 183, 185 (4th Cir. 2012) (quoting *Camalier v. Jeffries*, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995)); *Twombly*, 550 U.S. at 570 (plausibility standard).[3]

"The common law [] recognizes the right of an insurer to be subrogated to any cause of action that its insured has against a third party with respect to a covered loss." *Ward v. Allied Van Lines, Inc.*, 231

---

[3] Under the *Erie* doctrine, a federal court sitting in diversity applies (1) the substantive law of the state in which it sits and (2) federal procedural law. *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

5

F.3d 135, 140 (4th Cir. 2000) (citing North Carolina case law). By alleging that it paid the NFL's insurance claim for Fire-related damages to the Mediacruiser, Plaintiff has invoked a legally-recognized basis for suing one whose breach of a duty owed to the NFL proximately caused the Fire, and has plausibly alleged the damages element of its negligence claim. *See Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 598 (4th Cir. 1985) ("As a general rule, applicable to insurance and indemnity contracts of all kinds, the insurer, on paying to the insured the amount of the loss on the property insured, is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, that is, any person whose negligent or other tortious conduct caused the loss." (citation omitted)).

But Plaintiff has failed to plausibly allege at least two of the remaining three elements. Regarding the first element—the duty allegedly owed by CGS to the NFL—North Carolina courts have said that "[a]ctionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. The duty may arise by statute or by operation of law." *Olympic Prods. Co., Div. of Cone Mills Corp. v. Roof Sys., Inc.*, 88 N.C. App. 315, 322, 363 S.E.2d 367, 371 (1988) (quotation marks and citations omitted). Plaintiff alleges that XDS, CGS, and Pomp's Tire collectively owed the NFL "a duty . . . to properly design, manufacture, fabricate, assemble, test, and inspect the Mediacruiser in a . . . non-negligent manner." [DE-1 ¶ 22] However, XDS is the only of these Defendants alleged to have entered into a contractual relationship with the NFL. [DE-1 ¶¶ 10–12 (alleging that XDS agreed to "design and build" the Mediacruiser)] CGS is only alleged to have subcontracted (1) with XDS "to manufacture, assemble and/or build the custom Mediacruiser" for XDS and (2) with Pomp's Tire to have tires installed on the Mediacruiser. [DE-1 ¶¶ 11–12]

Plaintiff has not directed the court's attention to any authority standing for the proposition that alleging the existence of such subcontracts is alone sufficient to plausibly allege that CGS owed the NFL a

6

duty sounding in tort, i.e., that CGS was "placed . . . in such a relation with [the NFL] . . . that the law will impose upon [CGS] an obligation, sounding in tort and not in contract, to act in such a way that [the NFL] will not be injured[.]" *United Leasing Corp. v. Miller*, 45 N.C. App. 400, 406, 263 S.E.2d 313, 318 (1980). Moreover, Plaintiff admits in its brief opposing CGS's motion to dismiss that "Plaintiff is not privy to the details of the relationship between XDS, CGS and Pomp's Tire, including the specific duties and responsibilities of each entity, with respect to the design, build and construction of the subject Mediacruiser[,]" and argues that it needs "the benefit of discovery" to determine what specific duties CGS might have owed to the NFL. [DE-28 at 7]

Courts in this circuit have said that the group-pleading approach employed by Plaintiff may run afoul of *Twombly*. *See Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 744 (D. Md. 2008) ("Plaintiffs cannot remedy [a lack of factual allegations sufficient to establish liability] by simply listing everyone that *could have been* involved for every specific act that allegedly occurred on behalf of [employer-defendant]. At best, such pleading amounts to a conclusory allegation that [employee-defendants] were somehow responsible for the wrongful conduct of [employer-defendant]. At worst, the repeated refrain that all three individuals committed each and every act must be read as an allegation that *one of the three* did each act, an assertion that amounts to speculation and which is deficient under *Twombly*."). And Plaintiff's failure to articulate its theory regarding the duty CGS owed to the NFL and to provide supporting legal authority in its memorandum in opposition could alone be sufficient for the court to dismiss Plaintiff's negligence claim against CGS. *See* Local Civil Rule 7.2(a)(3) (memoranda supporting or opposing motions "shall contain . . . appropriate citations" to authority).

However, the court's independent research has uncovered the following North Carolina precedent:

> The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence. Thus, under certain circumstances, one who

7

> undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking. This duty to protect third parties from harm arises under circumstances where the party is in a position so that anyone of ordinary sense who thinks will at once recognize that if he does not use ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other.

*Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 429–30, 677 S.E.2d 485, 502–03 (2009) (quotation marks and citations omitted). Plaintiff has alleged that XDS subcontracted with CGS to build the Mediacruiser and it is reasonable to infer that CGS was in a position to at once recognize that failing to exercise ordinary care in building the Mediacruiser might harm a party other than XDS. *See id.* For this reason, the court does not dismiss Plaintiff's negligence claim against CGS based upon Plaintiff's failure to properly allege the specific duty CGS owed to the NFL and to support its allegation with legal authority.

However, assuming *arguendo* that Plaintiff has plausibly alleged that CGS owed the NFL a duty "to manufacture, assemble and/or build the custom Mediacruiser[4] . . . [in] a non-negligent manner" [DE-1 ¶¶ 11–12, 22], the complaint fails to plausibly allege that CGS breached this duty, the second element of negligence. In its attempt to allege XDS, CGS, and Pomp's Tire's collective breaches, Plaintiff provides a laundry list of actions and omissions purportedly constituting the breaches, which fall into three categories.

---

[4] Although Plaintiff collectively alleges that XDS, CGS, and Pomp's Tire owed the NFL a duty "to properly design, manufacture, fabricate, assemble, test, and inspect the Mediacruiser in a . . . non-negligent manner" [DE-1 ¶ 22], Plaintiff also alleges that "XDS retained Defendant CGS as a subcontractor *to manufacture, assemble and/or build* the custom Mediacruiser" [DE-1 ¶ 11 (emphasis added); *see also* DE-28 at 7 ("It is Plaintiff's understanding that [the NFL] contracted with XDS who retained CGS as a subcontractor *to construct and/or build* the Mediacruiser." (emphasis added))]. Plaintiff's more-specific allegations that CGS agreed to undertake the task of building the Mediacruiser—and not, e.g., to design the same—control the court's Rule 12(b)(6) analysis. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

8

The first category includes allegations that are not relevant to the task of building the Mediacruiser that CGS allegedly undertook. [*see* DE-1 ¶¶ 27(h), (k) (negligently designing the Mediacruiser)]. These allegations are therefore insufficient to plead that CGS breached any duty allegedly owed to the NFL.[5] The second category includes a host purported factual allegations that are no more than conclusory allegations that CGS was negligent in building the Mediacruiser. [*see* DE-1 ¶¶ 27(a)–(c), (e), (f), (j) and (l) (alleging that CGS failed to build a Mediacruiser that (a) would not subject the NFL to unreasonable harm, (b) was not unreasonably unsafe, (c) would not subject the NFL to unreasonable risk of fire, and (j) had adequate safeguards; that CGS failed to comply with unspecified (e) laws, safety practices, and (f) industry standards; and that CGS (l) "fail[ed] to use due care" in ways "to be disclosed during the course of discovery"). As mentioned above, such conclusory allegations are not accepted as true by courts adjudicating Rule 12(b)(6) challenges. *Iqbal*, 556 U.S. at 678; *see Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) ("We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." (quotation marks and citations omitted)). The final category includes allegations concerning: (1) CGS's alleged failure to warn the NFL regarding the purportedly-unsafe condition of the Mediacruiser [*see* DE-1 ¶¶ 27 (d) ("[f]ail[ure] to provide adequate warnings and instructions regarding the risk of fire and possible resultant damage to the Mediacruiser"), (i) (failure to warn regarding purportedly-defective condition), (j) (manufacturing "without

---

[5] Even if Plaintiff had plausibly alleged that CGS undertook a duty to design the Mediacruiser, Plaintiff's allegations of how CGS breached that duty lack factual details necessary to render them plausible within the meaning of *Twombly*. Plausible allegations that CGS negligently breached a duty to design the Mediacruiser would necessarily include allegations regarding what the flaw in the Mediacruiser's design was that rendered the Mediacruiser unreasonably unsafe, thereby pleading how CGS's design amounted to negligence. *See Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 505 (E.D. Va. 2013) (dismissing negligent-design claim: "[Plaintiff] fails to allege any facts that would permit the Court to conclude that a manufacturing or design defect existed, or that such a defect was the proximate cause of plaintiff's alleged injuries. . . . A bare allegation of a [manufacturing or design] 'defect' is no more than a legal conclusion." (collecting cases)), *aff'd*, 587 F. App'x. 78 (4th Cir. 2014).

9

adequate instructions" or "warnings")]; and (2) CGS's alleged failure to test or inspect the Mediacruiser [DE-1 ¶ 27(g)]. These allegations also fail to plausibly plead breach, because Plaintiff nowhere alleges (1) what condition rendered the Mediacruiser unreasonably unsafe such that CGS's failure to warn about the condition amounted to negligence or (2) what CGS negligently failed to discover. These allegations are thus mere "naked assertions of wrongdoing [without the] factual enhancement [necessary] to cross the line between possibility and plausibility of entitlement to relief." *Francis*, 588 F.3d at 193 (quotation marks and citations omitted). As regards CGS, all Plaintiff plausibly alleges is that (1) CGS built the Mediacruiser and (2) following construction "the Mediacruiser catastrophically failed at the left front wheel hub[,]" causing the Fire and Plaintiff's insurance payment. [DE-1 ¶¶ 10–16] The court is left entirely to speculate as to what CGS might have done or not done while building the Mediacruiser that Plaintiff believes breached a duty to the NFL: e.g., did CGS improperly construct the left front wheel hub? If so, what was improper? Where the court is left to so speculate, the claim at issue fails to "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555–56, and cannot withstand a Rule 12(b)(6) motion to dismiss.

Finally, for similar reasons, Plaintiff's negligence claim against CGS fails to plausibly allege the third element of negligence: proximate causation. By merely alleging that CGS built the Mediacruiser and that the Mediacruiser failed thereafter, Plaintiff seeks to take CGS to discovery based upon a post-hoc-ergo-propter-hoc theory of causation, which requires an unreasonable inference that courts uniformly reject. *See Deltek, Inc. v. Dep't of Labor*, 649 F. App'x 320, 337 (4th Cir. 2016) ("Post hoc ergo propter hoc is 'a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.'" (Agee, J., dissenting) (emphasis omitted) (quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005)); *J.W. v. Johnston Cnty. Bd. of Educ.*, No. 5:11-CV-707-D, 2014 U.S. Dist. LEXIS 134342, at *30–32 (E.D.N.C. Sept. 24, 2014) (rejecting post-hoc-ergo-propter-hoc theory of

causation). By failing to plausibly allege conduct by CGS amounting to a breach, Plaintiff has also failed to plausibly allege that CGS's conduct proximately caused the Fire which allegedly resulted in the damages here at issue.

For multiple reasons, then, Plaintiff's negligence claim against CGS must be dismissed.

### ii. N.C. Gen. Stat. § 99B products liability

North Carolina courts have said that "[a]s with other negligence actions, the essential elements of a products liability action based upon negligence are (1) duty, (2) breach, (3) causation, and (4) damages." *Crews v. W. A. Brown & Son, Inc.*, 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992); *see also Harbour Point Homeowners' Ass'n v. DJF Enters.*, 206 N.C. App. 152, 163, 697 S.E.2d 439, 447 (2010) ("the essential elements of a suit for products liability sounding in negligence that require proof are [1] a standard of care owed by the reasonably prudent person in similar circumstances, [2] breach of that standard of care, [3] injury caused directly or proximately by the breach, and [4] loss because of the injury." (internal quotations marks and citation omitted)). Plaintiff's N.C. Gen. Stat. § 99B claim essentially rehashes the allegations of its negligence claim against XDS, CGS, and Pomp's Tire, and therefore is "based upon negligence" within the meaning of *Crews*. [*see, e.g.*, DE-1 ¶¶ 36 ("XDS, CGS, and Pomp's Tire ... owed a duty to [the NFL] to design, assemble, fabricate, produce and/or manufacture a product that was reasonably safe in design and formulation"), 39 (Defendants "breached their duties to [the NFL] by failing to properly manufacture, design, fabricate, assemble, test, inspect, and/or sell the Mediacruiser in a manner which would not create a dangerous condition and/or increase the risk of harm to [the NFL]").

Plaintiff's N.C. Gen. Stat. § 99B claim against CGS fails for the same reasons its negligence claim against CGS fails. *See supra* Section III(a)(i). The complaint nowhere alleges what rendered the Mediacruiser unreasonably unsafe such that CGS's alleged construction of the Mediacruiser amounted to negligence implicating N.C. Gen. Stat. § 99B. For example, within its N.C. Gen. Stat. § 99B claim, Plaintiff

11

alleges that "[t]he Mediacruiser was unreasonably dangerous and defective in that it created an unreasonable risk of serious harm to the intended users and/or operators." [DE-1 ¶ 38] Such a conclusory allegation is plainly insufficient to support allegations that CGS's construction of the Mediacruiser either amounted to breach of a duty or proximately caused any damages. *Iqbal*, 556 U.S. at 678–79; *Francis*, 588 F.3d at 193.

For these reasons, Plaintiff's N.C. Gen. Stat. § 99B claim against CGS must also be dismissed.

### iii. Implied warranties

Under North Carolina law, "the general rule is that privity [of contract] is required to assert a claim for breach of an implied warranty involving only economic loss." *Gregory v. Atrium Door & Window Co.*, 106 N.C. App. 142, 144, 415 S.E.2d 574, 576 (1992). This court recently noted that N.C. Gen. Stat. § 99B:

> partially abrogates the privity requirement for implied warranty claims against manufacturers when the action is brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture ... of any product. In [*Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc.*, 175 N.C. App. 339, 346, 623 S.E.2d 334, 339 (2006)], the North Carolina Court of Appeals interpreted property damage consistent with the economic loss rule, i.e., to only include damage other than to the product itself. Thus, when a plaintiff asserts an implied warranty claim seeking only the recovery of economic loss, North Carolina still requires privity of contract.

*Kelly v. Ga.-Pac. LLC*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009) (internal quotation marks and citations omitted); *see Reece v. Homette Corp.*, 110 N.C. App. 462, 465, 429 S.E.2d 768, 769 (1993) ("the provisions of [N.C. Gen. Stat. §] 99B [a]re inapplicable where the alleged defects of the product manufactured by

12

defendant caused neither personal injury nor damage to property other than to the manufactured product itself.").

There is no allegation within the complaint that the NFL was in contractual privity with CGS, and the only damage allegedly suffered by the NFL[6] was "significant fire damage to the Mediacruiser[.]" [DE-1 ¶ 16] Since the Mediacruiser was the "manufactured product itself" within the meaning of *Reece*, the alleged damage was economic loss alone, the general rule applies, and Plaintiff's failure to allege privity of contract between the NFL and CGS is fatal to Plaintiff's implied-warranty claims against CGS.

Plaintiff's implied-warranty claims against CGS must therefore also be dismissed.

### b. *Black's Tire's crossclaim for indemnity*

As mentioned above, Black's Tire crossclaimed within its answer against CGS for, *inter alia*, common-law indemnity, as follows:

> [S]hould it be determined that Black's Tire was negligent on the occasion complained of in Plaintiff's Complaint and that Black's Tire's negligence was a proximate cause of any injury to Plaintiff . . . then it is alleged that [XDS, CGS, and Pomp's Tire] were negligent, and that such negligence was primary and active, and a proximate cause or the proximate cause of Plaintiff's injuries and damages, and any such negligence on behalf of Black's Tire . . . was secondary and passive[.] [DE-14 at 9]

CGS argued within its Rule 12(b)(6) motion to dismiss Black's Tire's crossclaim against it for indemnity that, *inter alia*, Black's Tire "conclusively cites to the Complaint's allegations of negligence by CGS as the basis for its common law indemnity claim without facts to support this allegation." [DE-20 at 4]

---

[6] The relevant damages for the analysis must be the NFL's, and not Plaintiff's, lest Plaintiff avoid a defense that CGS could raise against the NFL and Plaintiff's rights as subrogee therefore exceed those of the NFL as subrogor. *See Fid. Ins. Co. v. Atl. Coast Line R.R. Co.*, 165 N.C. 136, 139, 80 S.E. 1069, 1070 (1914) ("There is no privity or legal relation between the insurer and the tort feasor, and every right the former can possibly acquire must come through the insured and is subject to every defense and limitation which could be interposed against the [insured]. . . . Subrogation involves the idea of a right existing in one person, with which another person under certain circumstances is clothed, and it necessarily follows that the rights of the adversary party are neither increased nor diminished thereby.").

13

The court agrees that Black's Tire's crossclaim for indemnity cannot survive CGS's Rule 12(b)(6) motion to dismiss based upon an invocation of the allegations of the complaint where, as described above, *see supra* Section III(a), the complaint fails to state a plausible claim against CGS. *See Travelers Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, No. 2:15-cv-07959, 2015 U.S. Dist. LEXIS 154402, at *9–11 (S.D. W. Va. Nov. 16, 2015) (granting motion to dismiss "barebones crossclaim" for indemnity argued as "derivative of the plaintiff's original claim" for failure to plead sufficient facts in support: "These are precisely the types of legal conclusions that are not entitled to the assumption of truth in assessing the sufficiency of a claim under *Twombly* and *Iqbal*.").

The court therefore dismisses Black's Tire's crossclaim for indemnity against CGS.

   c. *Pomp's Tire's crossclaim for indemnity*

Also as mentioned above, Pomp's Tire crossclaimed within its answer against CGS for, *inter alia*, common-law indemnity, as follows:

> In the event it is determined that any negligence or wrongful act of Pomp's was a proximate cause of any damages alleged by the plaintiff . . . then it is alleged that each co-defendant was negligent on the occasions in question as described in plaintiff's Complaint or otherwise, and that such negligence was primary and active and was a proximate cause if not the proximate cause of the damages alleged by the plaintiff, while any negligence of Pomp's was secondary and passive[.] [DE-21 at 13]

CGS makes the same argument for why Pomp's Tire's crossclaim against it for indemnity should be dismissed that it made against Black's Tire [DE-26 at 3], and the court dismisses Pomp's Tire's crossclaim against CGS for indemnity for the same reasons. *See supra* Section III(b).

14

## IV. Conclusion

For the foregoing reasons, CGS's motions to dismiss are GRANTED.

SO ORDERED this the 21st day of August, 2020.

Richard E Myers II
RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE

15

Case 7:20-cv-00075-M   Document 48   Filed 08/24/20   Page 15 of 15